## HOFFMAN HOUSE v. BARKLEY.

(Supreme Court, Appellate Division, First Department. March 9, 1906.)

1. REPLEVIN—TITLE—DESCRIPTION IN MORTGAGE—SUFFICIENCY.

In an action to recover possession of an oil painting, known as "Love's Surprise," by Scalbert, plaintiff claimed title as purchaser on foreclosure of a mortgage executed by defendant's deceased husband as president of the mortgagor. *Held*, that the fact that in the schedule annexed to the mortgage there was included a painting by Scalbert was not sufficient to justify a finding that the painting sued for was ever the property of the plaintiff or of the corporation to whose rights it succeeded.

2. SAME—RIGHT OF POSSESSION—NECESSITY OF OWNERSHIP.

In an action to recover personal property in the possession of defendant, plaintiff must show ownership in order to recover.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Replevin, §§ 45–68.]

3. SAME—SUFFICIENCY OF EVIDENCE.

Where, in an action to recover possession of a painting to which plaintiff claimed title by purchase on foreclosure of a mortgage on the fixtures and chattels in a hotel, executed by defendant's deceased husband as president of the hotel company, the description in the mortgage was not sufficiently definite to include the painting, and it was shown that deceased always treated the painting as his private property and that it was never in the hotel proper or treated by the mortgagor or its grantor as hotel property, plaintiff was not entitled to recover.

O'Brien, P. J., and Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by the Hoffman House against Rose L. Barkley to recover

possession of an oil painting. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

John J. Kirby, for appellant.

Albert A. Wray, for respondent.

INGRAHAM, J. The nature of the action is stated in the opinion of Mr. Justice Laughlin. We do not concur in his conclusion, as we think the evidence was not sufficient to justify a finding that this painting, called "Love's Surprise," ever was the property of C. H. Read & Co. or their successors, the Hoffman House corporation. The fact that in a schedule annexed to a mortgage by the corporation there was included a painting by Scalbert was not sufficient to justify a finding that this particular painting sued for was ever the property of the plaintiff or of the corporation to whose rights it succeeded. The painting is in the possession of the defendant; and, to justify this judgment, there must be competent evidence of its ownership by the plaintiff. The evidence shows that Stokes always treated this painting as his private property; that it was never in the hotel proper, or treated by either the copartnership, or its successor, as hotel property.

We think, therefore, that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide event.

PATTERSON and CLARKE, JJ., concur.

LAUGHLIN, J. (dissenting). This is an action to recover the possession of an oil painting, by Scalbert, known in the art world by the title "Love's Surprise." Prior to the commencement of the action, the painting had been stored with the Manhattan Storage Warehouse, from which it was replevied herein and delivered to the plaintiff. The action was originally brought against the warehouse company and one Ella Harthorne; but after the seizure of the painting under the writ of replevin, the appellant was substituted in place of the former defendants. The painting was in the possession of Edward S. Stokes, at his residence in Seventy-Ninth street, at the time of his death on the 2d day of November, 1901. The appellant claims that the title thereto also was in him, and she claims title through him, or a right to possession as his widow. The plaintiff claims title by purchase on a foreclosure sale on the 25th day of May, 1894, under a mortgage given by the Hoffman House Company of New Jersey, to the Farmers' Loan & Trust Company, as trustee, executed in behalf of the company by said Stokes as its president, on the 2d day of September, 1890. The mortgage recited that the mortgagor had acquired from the firm of C. H. Read & Co. "the ownership and title to the fixtures, chattels, assets, and property" then "owned and used by it in its business of conducting hotels and restaurants in the city of New York," at certain specified places, including "the Hoffman House, at Broadway and Twenty-Fifth street;" and had agreed as part payment therefor to execute and deliver a series of 500 bonds of the par value of $1,000 each, secured by a mortgage upon the

property; and that the mortgage was given pursuant to said agreement. The property covered by the mortgage consisted of fixtures and other personal property and leases described in schedules annexed to the mortgage. The mortgage, after enumerating the schedules and making them a part thereof, contained the following provision:

"It being intended hereby to convey unto the party of the second part all of the property, assets, and effects of every kind and nature whatsoever, now owned and used by the party of the first part [the mortgagor] in and about its said business, wheresoever the same may be situated, and whether included in the schedules hereto annexed or omitted therefrom, together with all the fixtures, assets, property, and chattels hereafter to be acquired by it in the conduct of its business, either in addition to, or in substitution of, the property now owned by it, and such after acquired property shall be deemed to be embodied in and subject to the lien of this mortgage, even though not specifically designated therein."

In Schedule C, specified in and annexed to the mortgage, there was enumerated under the heading, "The Hoffman House," among other paintings and property, the following: "Painting, by Scalbert." The description of the property in the judgment of foreclosure and in the bill of sale executed by the referee, so far as material to the decision of the question presented by this appeal, at least, was the same as in the mortgage. Since the appellant's only claim of title or right to possession is through Stokes, who, as president of the Hoffman House Company of New Jersey, executed the mortgage, it is manifest that the only question presented by the appeal is whether the painting, "Love's Surprise," by Scalbert, was covered by the mortgage. The evidence shows that at the time the mortgage was executed this painting was hanging on the wall in the private apartment of said Stokes, situated in the Worth House, which was used as an annex to the Hoffman House; and that another painting, "Faust's Dream," by Falero, definitely described in and clearly covered by the mortgage and owned by the mortgagor, and still others the ownership of which was not shown and not shown to have been or not to have been covered by the mortgage, adorned the walls of the same apartment. It does not appear that any other painting by Scalbert was included in the mortgage, or that any other painting by Scalbert was in the apartment or in the Hoffman House or the Worth House, or whether or not there was any other painting by Scalbert in existence. It appears that Stokes continued to live at the Worth House until 1894 or 1895, and then moved into the Hoffman House proper, where he remained until September, 1897, when he sold his stock in, and severed official connection with, the plaintiff and moved up town.

It is claimed by the learned counsel for the appellant that the evidence was insufficient to identify this painting as the one referred to in the mortgage. It is to be borne in mind that no rights of creditors are involved. The question is to be decided as if Stokes were here claiming that the mortgagee could not claim this painting under the mortgage. It is evident that the mortgage covered some painting by Scalbert. This painting was there, and it was painted by Scalbert. It is reasonable to infer that if there had been another painting by Scalbert in Stokes' apartment and owned by him, or on the premises used for ho-

tel purposes, and not intended to be embraced in the mortgage, a more definite description of the painting intended to be mortgaged would have been inserted in the schedule. There is no definite evidence either that this painting was owned by Read & Co., or that it was used in connection with the hotel business, prior to the execution of the mortgage through the foreclosure of which plaintiff claims title, other than its use in the private apartment of the president of the hotel company, as aforesaid. There is some evidence that, subsequent to the execution of the mortgage, and in 1892 or 1893, the painting was hanging on the wall over the Hoffman House bar; and that when Stokes moved from the Worth House into the Hoffman House it was brought there with other effects of his, and hung on the wall of one of the rooms occupied by him as his private apartments. But this is somewhat vague, and it is not corroborated by the testimony of witnesses, who should have been able to corroborate it, if true, and is controverted by the testimony of other witnesses.

We are of opinion, therefore, that the only theory on which the judgment can be sustained is that "Love's Surprise" is the painting described in the schedule annexed to the mortgage, and in the foreclosure proceedings, as a "painting by Scalbert." The evidence on that point, as has been seen, is meagre, and it would seem that it could have been made more conclusive. We think, however, that from all the facts and circumstances, the inference that it is the painting covered by the mortgage and purchased by the plaintiff on the sale under the judgment of foreclosure, is fairly justified. If so, the removal of the painting to Stokes' private residence was wrongful, and therefore no demand was necessary. After Stokes severed his connection with the plaintiff, and moved from the Hoffman House, the plaintiff became involved in important litigation with him; and it does not appear that the officers of the plaintiff knew where the painting was. In these circumstances, the failure to commence the action until after his death was a fact having little bearing on the merits of the case.

We have examined the other exceptions, but they do not merit special mention.

It follows that the judgment should be affirmed, with costs.

O'BRIEN, P. J., concurs.